UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 2:12-cv-126-KSF

JANA JAYE McQUEEN                                                    PLAINTIFF

v.                                **OPINION & ORDER**

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                              DEFENDANT

\* \* \* \* \* \* \* \* \* \*

The plaintiff, Jana Jaye McQueen, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits ("DIB") based on disability. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

McQueen filed her claim for DIB benefits on September 19, 2008, alleging an onset date of February 15, 2005 [TR 163-66]. Her application was denied initially and on reconsideration [TR 83-85, 97-105]. After a hearing, the Administrative Law Judge ("ALJ") issued a decision reopening McQueen's prior DIB application and determining that she was disabled from February 15, 2005 through September 16, 2007, but not thereafter [TR 15, 20-30, 148-62]. McQueen subsequently requested review by the Appeals Council. The Appeals Council denied McQueen's request for review on April 4, 2012 [TR 1-6, 11-12]. She has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## II.    THE ADMINISTRATIVE PROCESS AND DECISION

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)    If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)    If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)    If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)    If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5)    Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is

2

work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

After conducting a hearing and reviewing the record, the ALJ determined that McQueen was disabled within the meaning of the Social Security Act from February 15, 2005 through September 16, 2007 [TR 20-30].  However, based on his review of the record, the ALJ determined that medical improvement occurred on September 17, 2007 that is related to her ability to work, and that she has been able to perform substantial gainful activity from that date through the date of his decision. Therefore, while McQueen was disabled from February 15, 2005 through September 16, 2007, her disability ended on September 17, 2007.

McQueen seeks reconsideration of the portion of the ALJ's decision finding McQueen not disabled as of September 17, 2007.  When determining whether a claimant's disability has ceased, the ALJ must apply the specific sequential evaluation process set out in 20 C.F.R. §404.1594(f).  As part of this process, the ALJ must first determine whether the claimant has experienced medical improvement, which is defined as any decrease in the medical severity of the claimant's impairment(s) based on changes in the symptoms, signs, and/or laboratory findings associated with the claimant's impairment(s).  *See* 20 C.F.R. § 404(b)(1), (c)(1).  If there has been medical improvement, then the ALJ must determine if the medical improvement relates to the claimant's ability to work and increases the claimant's RFC.  *See* 20 C.F.R. § 404.1594(f)(4).  Once medical improvement is established and is related to the claimant's ability to work, the adjudicator must decide if the claimant's current impairment(s) is severe.  *See* 20 C.F.R. § 404.1594(f)(6).  If the impairment(s) is severe, then the ALJ must assess the claimant's current RFC and determine if the claimant can do her past relevant work or other work.  *See* 20 C.F.R. § 404.1594(f)(7), (8).

3

In reaching his decision that McQueen was not disabled as of September 17, 2007, the ALJ first noted that her severe impairments included the addition of fibromyalgia to the other severe impairments found existing as of February 15, 2005, including history of sepsis, Klebsiella infection, ARDS (adult respiratory distress syndrome) and coma with resultant severe muscle wasting, bilateral plantar faciitis, bilateral Achilles tendinitis, and mild bilateral carpal tunnel syndrome [TR 24, 27]. However, the ALJ determined that she did not have any impairment or combination of impairments that met or medically equaled one of the impairments in the listings. *See* 20 C.F.R. § 404.1594(f)(2). The ALJ then determined that as of September 17, 2007, McQueen had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she can frequently lift ten pounds and can occasionally lift up to fifty pounds. Furthermore, in an eight-hour workday, the ALJ determined that she is able to sit eight hours, one hour at a time, and can stand/walk a total of eight hours, for twenty minutes at a time, as well as frequently reach bilaterally and climb, balance, stoop, kneel, crouch, and crawl on an occasional basis [TR 27]. Based on this RFC, the ALJ determined that McQueen could not perform her past relevant work.

Then, utilizing the Medical-Vocational Guidelines, relying on the testimony of the Vocational Expert ("VE"), and taking into consideration McQueen's age, educational background, past relevant work experience, and RFC, the ALJ found that McQueen was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for DIB. [TR 29-30]

## III.    GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of

the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently.  *See Her*, 203 F.3d at 389-90.  However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## IV.    ANALYSIS

On appeal, McQueen argues that substantial evidence does not support the Commissioner's decision that she was no longer disabled as of September 17, 2007.  Specifically, McQueen contends that the record does not support a finding that her medical improvement in her lower extremities permitted her to perform substantial gainful work activities when she had other significant impairments that prohibited work.

In reaching his decision, the ALJ placed great weight on the opinion of Dr. Robertson from September 19, 2007.   The record reflects that Dr. Robertson, a podiatrist, treated McQueen on multiple occasions from 2005 through 2007.  As a treating physician, the regulations require the ALJ to give his opinion more weight than other non-treating sources.  *See* 20 C.F.R. § 404.1527(c).  The

5

amount of weight to be afforded to a treating physician's opinion depends upon a variety of factors, including the examining relationship, the treatment relationship, the length and frequency of examinations, the nature and extent of the treatment relationship, the extent to which the opinion is supported by medical signs and laboratory findings, the extent to which the opinion is consistent with the record as a whole, whether the treating physician is a specialist, and other relevant factors. *Id.*

Based on his examinations of McQueen, Dr. Robertson opined on September 17, 2007 that McQueen could, among other things, sit for one hour at a time, eight hours total, and stand and walk for 20 minutes at a time, eight hours total [TR 684-86]. While Dr. Robertson is a podiatrist, his evaluation and opinion was not limited to McQueen's foot and ankle problems. For example, Dr. Robertson's opinion addressed McQueen's ability to reach, unrelated to any foot or ankle impairments [TR 507-,684-86]. Furthermore, his treatment notes reveal that he was aware of her other impairments, including adult respiratory distress syndrome ("ARDS"), and knew that she was applying for social security disability on the basis of that condition [TR 474, 476, 478, 506].

Additionally, other medical sources support Dr. Robertson's opinion. McQueen also received treatment from Dr. James Sammarco, an orthopedic doctor, for problems with her lower extremities [TR 565-70, 614-616]. Dr. Bashar Brijawi treated her for sleep problems [TR 508-517]. Dr. Thomas Due examined McQueen for thoracic outlet syndrome [TR 584-89]. McQueen also received treatment from Dr. Matthew Hogue, a chiropractor, and Dr. John Kelly for pain [TR 646-667, 668, 679]. Dr. Lisa Varghese treated McQueen for fibromyalgia [TR 571-82, 621-25, and 640-45]. While McQueen points to evidence of disability prior to 2007, she fails to come forward with any medical evidence from any of these treating sources after September 17, 2007 which contradicts Dr. Robertson's opinion.

6

Instead, the medical record shows that after that date, on November 9, 2007, McQueen underwent an EMG and nerve conduction studies of her lower extremities that were negative for polyneuropathy, myopathy, radiculopathy, and plexopathy. On December 3, 2007, Dr. Varghese noted that McQueen had a normal gait, normal muscle strength, normal reflexes and her range of motion was "excellent." [TR 577-78]. By November of 2009, McQueen reported pain only in her lateral legs, thighs, and upper back/neck and reported that she was feeling better [TR 624]. Then in April 2010, Dr. Varghese found no evidence of inflammation in McQueen's heels or Achilles [TR 640].

Dr. Sammarco examined McQueen in September 2008, finding no evidence of instability or tenderness in her foot, and opined in 2009 that McQueen could perform sedentary work [Tr 686-87]. Dr. Due noted mild bilateral carpal tunnel syndrome in September 2008, but found that surgery was not necessary [TR 584-88]. Dr. Turner found no evidence of airway obstruction in October 2008 [TR 527-28]. The only medical records after September 17, 2007 cited by McQueen in support of her appeal are from assessments by Dr. Kelly in March and May 2009 where he found that she presented "with a symptom complex that is consistent with FMS (widespread pain with 18/18 tender points positive), fatigue, sleep disturbance, and memory impairment." [AR 620, 669]. This finding, alone, cannot overcome the other substantial evidence in support of the ALJ's opinion.

Also supporting the ALJ's decision are McQueen's reported activities of daily living. The record reflects that she was able to babysit her nieces and had become an avid bicyclist [57, 576, 643]. She prepared simple meals, drove, did laundry, loaded the dishwasher, picked up around the house, and shopped [TR 54, 56, 205, 218, 225-27, 250, 253, 261]. McQueen also cared for her young daughter, supervised play dates and took her daughter to the pool [TR 53, 56, 224, 261].

Furthermore, the ALJ determined that McQueen's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  For example, although McQueen reported that she goes to the doctor once a week, this was not supported by any medical evidence. The record, however, does reveal that McQueen has a history of being non-compliant with doctor's orders, as she did not fill prescriptions, was reluctant to take prescription medication, and did not follow through with laboratory work or physical therapy assessments [TR 506-23, 526-49, 566-89, 613-79].  Her unwillingness to follow through with doctor's orders provides further evidence that her condition was not as limiting as she claimed. *See* 20 C.F.R. § 404.1529(c)(3)(v),(4).

McQueen contends that in addition to her alleged physical impairments, she also suffers from fatigue, lack of concentration, and memory issues.  However, the record indicates that a sleep study revealed no sleep apnea or restless leg syndrome [TR 513, 573], and she reported that sleep difficulty was a result of her two-year old daughter's inability to sleep.  McQueen's husband indicated that she had no difficulty paying attention [TR 228].  Various treating sources reported that her mental status was normal and that she had a good memory [TR 509, 669].  Importantly, McQueen received no treatment for any mental health issues, and three state agency medical consultants found no medically determinable mental impairment [TR 491, 550, 590].  Based on this record, the ALJ did not err by failing to address issues of fatigue, concentration, and memory.

After careful review, the Court concludes that substantial evidence supports the ALJ's decision.  The ALJ properly considered the relevant evidence and appropriately gave the greatest weight to Dr. Robertson's well-supported opinion.  Accordingly, the decision of the Commissioner will be affirmed.

**V.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby

**ORDERS** as follows:

(1)    the plaintiff's motion for summary judgment [DE #6] is **DENIED**;

(2)    the defendant's motion for summary judgment [DE #7] is **GRANTED**;

(3)    the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4)    a judgment consistent with this Opinion & Order will be entered contemporaneously.

This May 1, 2013.



**Signed By:**

_**Karl S. Forester**_  $KSF$

**United States Senior Judge**

9